**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **GEORGE BENYAMIN,** Plaintiff, | ) | |
| v. | ) | **C.A. No. 05-40004-FDS** |
| **THOMAS BELIVEAU, et al.,** Defendants. | ) | |

**MEMORANDUM AND ORDER**

**SAYLOR, J.**

This matter involves a *pro se* prisoner complaint. Plaintiff George Benyamin has filed suit against 26 defendants, including most of the principal participants in his criminal trial, alleging that he is the "target of a conspiracy" to steal his real estate properties. This lawsuit is almost identical to one dismissed by the Court in October 2003. For the reasons set forth below, the Court (1) denies Plaintiff's Emergency Motion for Preliminary Injunction; (2) allows Plaintiff's Application to Proceed Without Prepayment of Fees; (3) advises Plaintiff that he may be enjoined from filing new actions and subjected to monetary sanctions if he continues to file frivolous lawsuits; and (4) dismisses this action with prejudice.

**BACKGROUND**

Plaintiff George Benyamin is an inmate at N.C.C.I. Gardner in Gardner, Massachusetts, serving a 12-to-15 year sentence for a 1998 rape and indecent assault and battery. *See Commonwealth v. Benyamin*, 2000 WL 1476192 (Mass. App. Ct. July 24, 2000). On January 7,

2005, Benyamin submitted a 52-page *pro se* complaint with numerous exhibits against 26 defendants – including, among others, the victim of his assault, the presiding judge, the prosecutors, defense counsel, the court reporter, and two witnesses from the trial. The complaint alleges that the defendants illegally conspired to convict him on false evidence in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962, 1964, et. seq. Benyamin also filed an application to proceed *in forma pauperis,* accompanied by a certified copy of his prison account statement and an emergency motion for a preliminary injunction to enjoin the City of Worcester from demolishing certain buildings that he owns (which apparently have been condemned).

The complaint in this action is virtually identical to a complaint Benyamin filed in 2003 in this Court. *See* Second Amended Complaint, *Benyamin v. Beliveaux, et. al.* (D. Mass. filed Oct. 16, 2003) (No. 03-40152).[1] Both the 2003 second amended complaint and the present complaint seek equitable and monetary relief against the City of Worcester, three city officials,[2] two police officers,[3] one constable,[4] six private attorneys,[5] three private law firms,[6] two assistant district

[1] Although there are some minor alterations in pagination and paragraph numbering, as a whole, the substantive allegations in the 2003 second amended complaint and the present complaint are nearly identical.

[2] Thomas R. Hoover, Worcester City Manager; David Holden, Worcester Commissioner Inspector; and Chief Inspector Cahill.

[3] Worcester Police Officers Eileen Finneran and Mark Tivnan.

[4] Constable Frank Tabori.

[5] Thomas W. Belivieau, Esq.; Alan Mason, Esq.; David Moore, Esq.; Joseph Brennan, Esq.; Richard N. Bradley, Esq.; and Donald Richard, Esq.

[6] Fisher, Foley, Brennan & Sousa; Fuller, Rosenberg, Palmer & Beliveau; and Law Offices of Alan Mason.

attorneys,[7] one state court judge,[8] two court reporters,[9] one state court clerk,[10] and three individuals.[11] (Complaint, ¶¶ 2 - 26).

Although the allegations are not entirely clear, Benyamin contends the defendants conspired "to take his rental properties, and usurping his Limousine-Car-Rental Business, initiating the fraudulent schemes which include using Criminal Court proceedings, uttering fraud, perjury, secondary subordination of perjury by Defendants in Courts of law, as means to inflict imprisonment upon Plaintiff engendering the success of the fraudulent scheme." (*Id.* at 3-4.) Underlying Benyamin's claims is the contention that he was wrongly convicted of rape, and that the victim and others concocted a scheme with others in order to obtain a civil judgment for money damages against him.[12] Benyamin's complaint is accompanied by voluminous exhibits including legal citations, medical documents, transcripts of legal proceedings, and other materials purporting to support his claims.

The history of the litigation in 2003 is material to this case, and may be summarized as follows:[13]

---

[7] Assistant District Attorneys Ian M. Bennie and Kathleen Dellostritto.

[8] Hon. James Donohue, Worcester Superior Court.

[9] Madeline R. Arn, Court Reporter, and Susan A. Garvin, Official Court Reporter.

[10] Loring P. Lamoureaux, Clerk, Worcester Superior Court.

[11] The three individual defendants are Jamie Milot, Ann Egnitz, and Jessica Barrie. Milot was the victim of the crime. Egnitz and Barrie are friends of Milot's and both testified at Benyamin's criminal trial for the prosecution. *See Commonwealth v. Benyamin*, 2000 WL 1476192 (Mass. App. Ct. July 24, 2000).

[12] Milot, the victim, also filed a civil action against Benyamin for assault and sexual battery. *See Milot v. Benyamin*, No. 99-1250, 2001 WL 562890 (Worcester Superior Court May 10, 2001).

[13] In addition to the 2003 civil action, Benyamin has filed two federal habeas petitions, both of which were denied for failure to exhaust state remedies. *See Benyamin v. Bissonette*, 01-40205 (D. Mass. November, 25,

On June 30, 2003, Benyamin filed a complaint and an amended complaint alleging a conspiracy among seventeen defendants under the civil RICO statute. *See* Complaint, Docket No. 1, and Amended Complaint, Docket No. 2, *Benyamin* (No. 03-40152). On September 10, 2003, Judge Gorton denied Benyamin's June 30, 2003 motion for a temporary restraining order to prevent the defendants from freezing his assets and foreclosing on his properties. *See id.* Memorandum and Order at Docket No. 7. On October 16, 2003, Benyamin filed a second amended complaint that was virtually identical to the present complaint. *See id.* at Docket No. 10.

On October 31, 2003, Judge Gorton issued a second Memorandum and Order denying a motion for a temporary restraining order to stop the condemnation and demolition order on Benyamin's properties. *See id.* at Docket No. 14. The Order also identified a number of grounds for dismissal and directed Benyamin to show cause why the action should not be dismissed. *See id.* at ¶¶ II-IV. After Benyamin failed to show cause, the case was dismissed on March 29, 2004. *See id.* at Order of Dismissal at Docket No. 20.

On April 28, 2004, Benyamin filed another motion for a temporary restraining order that was denied the same day. *See id.* at Docket No. 22. Then, on May 14, 2004, Benyamin filed an affidavit claiming judicial bias and prejudice on the part of Judge Gorton and seeking his disqualification. *See id.* at Docket No. 23. On May 24, 2004, Benyamin filed yet another motion for temporary restraining order. *See id.* at Docket No. 24. The Court denied that motion on July 21, 2004, and noted that the case had been dismissed on March 29, 2004. On September 10, 2004, Benyamin filed a letter addressed to Chief Judge Young complaining of judicial bias in

---

2002), and *Benyamin v. Immigration and Naturalization Service*, 03-40073 (D. Mass. January 12, 2004).

connection with this action. *See id.* at Docket No. 26.

## DISCUSSION

### I.     The Court May Screen This Action Under the Prison Litigation Reform Act

Under the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 ("PLRA"), courts are required to screen complaints in civil actions in which a prisoner seeks redress from a government entity, officer, or employee. *See* 28 U.S.C. § 1915A(a). After review, a complaint must be dismissed if it is "(1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.§ 1915A(b). This action is subject to the screening procedures of § 1915A, in light of the fact that Benyamin has sued the City of Worcester and multiple government officials. Because Benyamin seeks to proceed *in forma pauperis*, his complaint is also subject to review under § 1915(e)(2)(B), which permits the court to dismiss complaints on grounds identical to those provided in § 1915A(b).

### II.    This Action Is Barred by the Doctrine of Res Judicata

Benyamin cannot circumvent Judge Gorton's dismissal on the merits in *Benyamin* (No. 03-40152) by re-filing the same complaint with another District Judge. Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from re-litigating issues that were or could have been raised in that action. *Havercombe v. Department of Education*, 250 F.3d 1, 3 (1st Cir. 2001) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). A court that has previously decided an issue may dismiss an action "*sua sponte*, consistent with the res judicata policy of avoiding judicial waste." *In re Medomak Canning*, 922 F.2d 895, 904-905 (1st Cir. 1991) (citations omitted); *cf. Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) (noting it is

well-established that a court may take judicial notice of other relevant court proceedings).

Here, Benyamin's claims are virtually identical to those raised in his 2003 case that was dismissed on the merits by Judge Gorton. *See* Order of Dismissal at Docket No. 20, *Benyamin* (No. 03-40152). The only differences between the two complaints are minor changes in pagination and formatting; the substance of the complaints are identical in all relevant respects. The doctrine of res judicata prohibits the filing of identical claims in another lawsuit, and therefore this claim should be dismissed.

**III. <u>Plaintiff's Claims Should Be Dismissed on the Merits</u>**

Even if res judicata did not provide a basis for *sua sponte* dismissal of this action, the action is still subject to dismissal on the merits pursuant to §§ 1915A(b)(1) and 1915(e)(2)(B) for the same reasons set forth in Judge Gorton's October 31, 2003 Memorandum and Order, which is attached to this Memorandum and Order and is incorporated herein by reference. *See* Docket No. 14, *Benyamin* (No. 03-40152). Benyamin's present complaint does not raise any new factual or legal assertions that would alter the findings and conclusions contained in the 2003 Memorandum and Order, and therefore should be dismissed.

**IV. <u>Plaintiff's Motion for Injunctive Relief</u>**

Benyamin yet again seeks to have this court enjoin the demolition of three properties that he owns in the City of Worcester. *See* Motions for Restraining Order, Docket Nos. 22 and 24, *Benyamin* (No. 03-40152).

To obtain the extraordinary remedy of preliminary injunctive relief, a plaintiff must show that: (1) he is likely to succeed on the merits of the case, (2) he will suffer irreparable harm absent the injunction, (3) the injury to him outweighs the harm to the defendants if granted, and (4) the

injunction does not adversely affect the public interest. *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981); *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 70 (D. Mass. 1993) (extending the four-part preliminary injunction test to temporary restraining orders).

Because Benyamin's claims are subject to dismissal on res judicata grounds and for failure to state a claim upon which relief may be granted pursuant to §§ 1915(e)(2)(B) and 1915A(b), he has not demonstrated a likelihood of success on the merits. Accordingly, Benyamin fails to meet the requisites of Fed. R. Civ. P. 65 and his motion for injunctive relief is denied.

**V. Benyamin's Application to Proceed *In Forma Pauperis***

In order to proceed *in forma pauperis*, a prisoner must file an affidavit describing his assets and stating that he is unable to pay the costs of the lawsuit, together with a certified copy of his prison account statement for the prior six-month period. 28 U.S.C. § 1915(a).

Benyamin submitted such an application here. The application indicates that he has received no income in the past twelve months and has been unemployed since 1996. His prison account statement indicates that he has $43.50 in his personal account and $360.94 in his savings account. Given these statements and the numerous references within the complaint to his substantial debts, the money in his prison account appears to be his sole asset. Therefore, even though Benyamin failed to complete the second page of the Application, he has provided this Court with sufficient information to demonstrate that he is entitled to *in forma pauperis* status.

Although Benyamin has qualified for *in forma pauperis* status, he must still pay the filing fees associated with this complaint. The PLRA was enacted to discourage prisoners from filing frivolous actions or otherwise abusing the judicial system. *See* H.R. Conf. Rep. No. 104-378

(1985). To deter such suits, § 1915(b)(1) of the PLRA provides that prisoners who bring civil actions or file appeals *in forma pauperis* must still pay the "full amount of a filing fee." *In forma pauperis* status merely postpones payment of the filing fees to a later date. A prisoner remains responsible for the filing fees, and courts will assess and (when funds exist) collect the monies owed from the prisoner in accordance with § 1915(b)(1)-(2).

Another change brought by the enactment of the PLRA is the order in which courts examine prisoner's complaints. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997). The PLRA requires courts to first focus on the plaintiff's financial status and then consider the merits of the claims presented. *Id.* Therefore, under the PLRA, a prisoner becomes responsible for payment of the filing fees the moment the civil action is filed. *See id.* at 607, *citing In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997); *see also Williams v. Roberts*, 116 F.3d 1126 (5th Cir. 1997) (per curiam) (holding that fees in an appeal are assessed "at the moment the appeal is filed, regardless of whether the appeal is later dismissed").

Benyamin is therefore responsible for the filing fee notwithstanding the dismissal of this action. To hold otherwise would undermine the purposes of the PLRA, because prisoners would be permitted to file frivolous lawsuits to test the sufficiency of their claims without incurring the financial burden of a filing fee. Accordingly, a separate Notice for Payment of Prisoner Filing Fee has been filed contemporaneously with this Order setting forth a payment schedule for the filing fees pursuant to § 1915(b).

### VI. <u>This Court May Enjoin Plaintiff from Filing Further Actions</u>

Notwithstanding the imposition of the filing fee, Benyamin is put on notice that this Court may impose additional monetary sanctions pursuant to both its inherent authority and Fed. R. Civ.

P. 11 and may enjoin him from filing new actions absent leave of court should Benyamin continue to file duplicative, meritless, or otherwise improper pleadings.

### A. Rule 11 Authorizes the Court to Impose Sanctions against Benyamin

Under Fed. R. Civ. P. 11, a court may impose sanctions on an unrepresented party if he or she submits a pleading for an improper purpose or if the claims within it are frivolous or malicious. *See* Fed. R. Civ. P. 11(b)(1), (2); *Eagle Eye Fishing Corp. v. Department of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994) (*pro se* parties, like all parties and counsel, are required to comply with the Federal Rules of Civil Procedure); *Pronav Charter II, Inc. v. Nolan*, 206 F. Supp. 2d 46, 53 (D. Mass. 2002) (noting that Rule 11 applies to *pro se* litigants) (citation omitted).[14] Rule 11 exists, in part, to protect defendants and courts from wasteful, frivolous, and harassing lawsuits and provides for sanctions to deter the filing of such lawsuits. *See Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 (1st Cir. 1992). Once a court imposes sanctions, its decision is only reviewable under an abuse of discretion standard. *Cooter & Gell v. Hartmarx*

---

[14] Rule 11 provides in pertinent part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11.

*Corp.*, 496 U.S. 384, 405 (1990); *accord Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 393-394 (1st Cir. 1990).

The Advisory Committee Notes accompanying the 1993 Amendments to Rule 11 specify factors to be considered when determining whether sanctions are warranted and, if so, the type and degree of any sanction that should be imposed. *See* Advisory Committee Notes to Rule 11, subdivisions (b) and (c), ¶8. Those factors include: "[1] [w]hether the improper conduct was willful, or negligent; [2] whether it was part of a pattern or activity, or an isolated event; [3] whether it infected the entire pleading, or only one particular count or defense; [4] whether the person has engaged in similar conduct in other litigation; . . . [5] what effect it had on the litigation process in time or expense; [6] whether the responsible person is trained in the law; [7] what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case . . . ." *Id.*; *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 506 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).

Applying these factors, Benyamin's conduct thus far warrants sanctions. Benyamin's filing of the present complaint after an identical complaint was dismissed by Judge Gorton on the merits for failing to state a claim upon which relief may be granted demonstrates a pattern of improperly filing meritless lawsuits. *See, e.g.*, *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (it is malicious *per se* for a pauper to file successive *in forma pauperis* suits that duplicate claims made in other pending or previous lawsuits).

Moreover, Benyamin's repeated filings in the present action and the 2003 lawsuit seeking emergency injunctive relief, even after such relief was denied, constitutes a deliberate, abusive pattern of behavior resulting in the expenditure of hours of the court's time in processing and

deciding his filings and pleadings. Significantly, plaintiff has never submitted any argument or information to rebut the findings of fact and conclusions of law contained in Judge Gorton's Memorandum and Order, despite an opportunity to do so. *See* Docket No. 14, *Benyamin* (No. 03-40152). Benyamin instead chose to re-file his lawsuit with another District Judge.

It appears that a substantial sanction may be necessary to send Benyamin the message that the repeated filing of legally deficient claims is not permissible. *See Vasile*, 20 F. Supp. 2d at 506 (litigation must be set to rest); *cf. In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 131 (S.D.N.Y. 1999) (stating that the "continued assertion of a factual or legal argument long after that argument has proven to be completely baseless is sanctionable conduct as is the waste of judicial resources and resulting inefficiencies and delays that affect all actual and potential litigants in the federal courts") (internal citations omitted); *Farguson v. MBank Houston*, N.A, 808 F.2d 358, 359 (5th Cir. 1986) (noting a pro se litigant "has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets").

**B. <u>The Court Has Inherent Powers to Sanction Benyamin</u>**

In addition to its Rule 11 powers, the District Court has the inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through its orders or through the issuance of monetary sanctions for bad faith, vexatious, wanton, or oppressive behavior. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-50 (1991); *accord United States v. Kouri-Perez*, 187 F.3d 1, 7-8 (1st Cir. 1999) (same); *John's Insulation, Inc. v. L. Addison & Assocs.*, 156 F.3d 101, 109 (1st Cir. 1998) (district court did not abuse its discretion in ordering dismissal of the complaint and default judgment as a sanction for plaintiff's protracted delay and

repeated violation of court's order under its inherent powers rather than under Rule 41); *Alexander v. United States*, 121 F.3d 312, 315-316 (7th Cir. 1997) (sanctioning inmate in the amount of $500 pursuant to court's inherent authority to prevent repetitious, meritless litigation).

Vexatious conduct occurs where a party's actions are frivolous, unreasonable or without foundation. *Local 285 Service Employees Intern'tl v. Nontuck Resources Assoc., Inc.*, 64 F.3d 735, 737 (1st Cir. 1995); *accord Alexander*, 121 F.3d at 315-316 (noting that sanctions are "appropriate when objectively unreasonable litigation-multiplying conduct continues despite a warning to desist"). Subjective bad intent is not necessary to justify an award for vexatious conduct. *Local 285 Service Employees Intern'tl*, 64 F.3d at 737.

Because Benyamin was on notice after the 2003 dismissal of his case before Judge Gorton that the claims he brought were without merit and failed to state a claim upon which relief could be granted, filing the same complaint with this Court amounts to vexatious conduct. Because Benyamin has demonstrated a pattern of filing meritless lawsuits, sanctions pursuant to the Court's inherent authority may be appropriate to prevent future misuse of this Court and its resources by Benyamin.

### C. Abusive Litigants May Be Enjoined from Filing Claims Without Leave of Court

As with the imposition of sanctions, a district court also has the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation. *Elbery v. Louison*, 201 F.3d 427, 1999 WL 1295860 at *2 (1st Cir. Dec. 17, 1999) (per curiam) (citing *Cok v. Family Court of Rhode Island*, 985 F.2d 32, 34 (1st Cir. 1999)). Benyamin's repeated filing of factually and legally deficient complaints as well as emergency motions are a burden on this Court's time

and resources and amount to an abuse of the processes of this Court. The Court could issue an injunction barring Benyamin from filing any further claims without seeking leave of court for this behavior. *See Castro v. United States*, 775 F.2d 399, 408 (1st Cir. 1985) (per curiam) ("[I]n extreme circumstances involving groundless encroachment upon the limited time and resources of the court and other parties, an injunction barring a party from filing and processing frivolous and vexatious lawsuits may be appropriate."); *accord Gordon v. United States Dep't of Justice*, 558 F.2d 618, 618 (1st Cir. 1977) (per curiam) (noting the court's power to enjoin litigants was clearly established).

Although the Court declines to impose an injunction or monetary sanctions on Benyamin at this time, he is hereby advised that any further filings with respect to the issues raised in *Benyamin* (03-41052) and in the present action will almost certainly result in the imposition of sanctions and an order enjoining him from filing new actions absent leave of Court.

Additionally, Benyamin should take note that this dismissal is his second dismissal for failure to state a claim upon which relief may be granted. Should he file another civil suit that is dismissed on these grounds or on any of the grounds set forth in § 1915(e)(2)(B), it is highly likely that he will be prohibited from filing any further lawsuits pursuant to § 1915(g) without first demonstrating good cause.

**ORDER**

Based upon the foregoing, it is hereby ORDERED:

1. Plaintiff's Emergency Motion for a Preliminary Injunction is DENIED.

2. Plaintiff's complaint is DISMISSED with prejudice.

3. The Application to Proceed Without Prepayment of Fees is ALLOWED and a filing fee is assessed pursuant to 28 U.S.C. §1915(b)(1).

4. Plaintiff is advised that the Court will consider imposing sanctions and enjoining him from filing new actions should he continue to file improper, malicious, or frivolous pleadings.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: March 15, 2005